UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSE FRANCISCO DEODATTI COLON,<br><br>    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI[1],<br><br>    Defendant. | CIVIL ACTION NO. 3:21-CV-00067<br><br>(MEHALCHICK, MJ) |

## MEMORANDUM

Plaintiff Jose Francisco Deodatti Colon ("Colon") brings this action under sections 205(g) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (incorporating § 405(g) by reference), seeking judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Doc. 1). The matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 9).

For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, it is hereby ordered that the Commissioner's decision be **VACATED** and the case be **REMANDED** to the Commissioner to fully develop

---

[1] The Court has amended the caption to replace, as the named defendant, Acting Social Security Commissioner Andrew Saul with his successor, Social Security Commissioner Kilolo Kijakazi. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

the record, conduct a new administrative hearing, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g).

I. **BACKGROUND AND PROCEDURAL HISTORY**

On August 26, 2016, Colon protectively filed applications under Title II and Title XVI of the Social Security Act claiming disability beginning August 26, 2016. (Doc. 14-4, at 30). The Social Security Administration initially denied the applications on January 11, 2017, prompting Colon's request for a hearing, which Administrative Law Judge (ALJ), Richard E. Guida, held on April 23, 2018. (Doc. 14-4, at 30). In a July 27, 2018, written decision, the ALJ determined that Colon is not disabled and therefore not entitled to benefits or income under Title II or Title XVI. (Doc. 14-4, at 45). On August 16, 2019, the Appeals Council subsequently granted Colon's request for review, vacated the hearing decision, and remanded the case to an ALJ. (Doc. 14-4, at 50-51). On remand, the ALJ was instructed to

> (1) [o]btain additional evidence concerning [Colon's] impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing evidence . . . [including], if warranted and available, consultative orthopedic and mental status examinations and medical source statements about what the claimant can still do despite the impairments; (2) [g]ive further consideration to [Colon's] maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations, in particular the claimant's ability to stand and walk . . .; and (3) [o]btain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on [Colon's] occupational base. The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy . . . . Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations . . . .
>
> (Doc. 14-4, at 52).

The ALJ conducted a second hearing on January 6, 2020. (Doc. 14-2, at 16). In a January 24, 2020, written decision, the ALJ determined that Colon is not disabled and therefore not entitled to benefits or income under Title II or Title XVI. (Doc. 14-2, at 40). On November 24, 2020, the appeals council denied Colon's request for review. (Doc. 14-2, at 2).

On January 12, 2021, Colon commenced the instant action. (Doc. 1). The Commissioner responded on June 28, 2021, providing the requisite transcripts from Colon's disability proceedings. (Doc. 13; Doc. 14). The parties then filed their respective briefs, with Colon raising six principal bases for reversal or remand. (Doc. 19; Doc. 24).

II. **STANDARD OF REVIEW**

To receive benefits under Titles II or XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.909. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).[2] Additionally, to be eligible under Title II, a claimant must have been insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

A. ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity (RFC); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1512(a), 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1).

B. JUDICIAL REVIEW

The Court's review of the Commissioner's final decision denying a claimant's application for benefits is limited to determining whether the findings of the final decisionmaker are supported by substantial evidence in the record. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Colon was disabled, but whether the Commissioner's determination that Colon was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

III. **T**HE **ALJ'**S **D**ECISION

In a decision dated January 24, 2020, the ALJ determined that Colon "has not been under a disability, as defined in the Social Security Act, from November 14, 2018 through the date of this decision." (Doc. 14-2, at 40). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a).

### A. STEP ONE

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If a claimant is engaging in SGA, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. §§ 404.1572, 416.972. The ALJ must consider only the earnings of the claimant. 20 C.F.R. §§ 404.1574(a)(2), 416.974(a)(2). Here, the ALJ determined that "[Colon] ha[d] not engaged in [SGA] since August 26, 2016, the alleged onset date." (Doc. 14-2, at 18). Thus, the ALJ proceeded to step two.

### B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment – or a combination of impairments – that is severe and meets the 12-month duration requirement. 20 C.F.R. §§ 404.1502(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an impairment or combination of impairments that significantly limits the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to consider step three. Here,

the ALJ found that Colon has five severe, medically determinable impairments: (1) degenerative disc disease, (2) fibromyalgia, (3) bilateral carpal tunnel syndrome, and (4) obesity. (Doc. 14-2, at 19). The ALJ also noted that Colon has the following non-severe impairments: breathing difficulties, obstructive sleep apnea, history of mitral valve prolapse, peripheral vascular disease, hepatitis C, GERD, H. pylori, hypertension, knee and/or foot impairment, diabetes, thyroid impairment, hepatitis C, hyperlipidemia, history of heroin abuse, anxiety, and depression. (Doc. 14-2, at 19-24).

    C.    STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 404.1526, 416.920(a)(iii), 416.925, 416.926. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairment or impairments meet a listing, then the claimant is considered disabled, otherwise, the ALJ must proceed to and analyze the fourth step of the sequential analysis. 20 C.F.R. §§ 404.1520(d), 416.920(d). Here, the ALJ determined that Colon did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Doc. 14-2, at 24). The ALJ considered the following listings: 1.04 – Disorders of the spine, 14.09 – Inflammatory arthritis, 11.14 – Peripheral neuropathy, and considered Colon's obesity as to whether it increased the severity of his coexisting impairments to the extent that the combination of impairments met the requirements of a Listing. (Doc. 14-2, at 24).

## D. Residual Functional Capacity

Between steps three and four, the ALJ determines the claimant's residual functional capacity (RFC), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all the claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable medical impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c).

After weighing Colon's statements against other evidence in the record, the ALJ found that Colon's impairments could reasonably be expected to cause the alleged symptoms, but that his statements about the intensity, persistence, and the limiting effects of the symptoms were not accepted to the extent Colon claims to be inhibited. (Doc. 14-2, at 25). The ALJ then went on to detail Colon's medical records and treatment history. (Doc. 14-2, at 26-38). Considering all evidence in the record, the ALJ determined that

> [Colon] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he requires a sit/stand option. [Colon] is capable of frequent using of his hands and occasional performing of postural movements, but never climbing of ladders, ropes or scaffolds. [Colon] must avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation.

(Doc. 14-2, at 24-25).

## E. Step Four

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do the work. 20 C.F.R. §§ 404.1560(b), 416.920(a)(4)(iv). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his past relevant work despite his limitations, he is not disabled." *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019) (citing 20 C.F.R. § 404.1520(a)(4)(iv)); *see also* 20 C.F.R. § 416.920(a)(4)(iv). Here, after comparing Colon's RFC to the demands of Colon's past relevant work as a security guard and an industrial cleaner, the ALJ found that Colon is capable of performing his past relevant work as a security guard. (Doc. 14-2, at 38). The ALJ determined that Colon could perform his "past relevant work as a security guard as generally and actually performed [as t]his work does not require the performance of work-related activities precluded by [Colon's RFC]." (Doc. 14-2, at 38).

F. STEP FIVE

At step five, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant who can adjust to other work is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Although the ALJ found that Colon could perform his past relevant work as a security guard, he still proceeded to examine whether there are other jobs that exist in significant numbers in the national economy that Colon could perform. (Doc. 14-2, at 38-40). Here, considering Colon's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Colon could have performed. (Doc. 14-2, at 38). In making this determination, the ALJ relied on the expertise of the vocational expert, who testified that Colon could have performed the requirements of representative occupations, such as a bakery worker, potato chip sorter, or small products assembler with jobs ranging from 50,000 to 230,000 positions nationally. (Doc. 14-2, at 39).

Given the foregoing analysis, the ALJ determined that Colon was not disabled and denied his applications for benefits. (Doc. 14-2, at 40).

IV. **DISCUSSION**

On appeal, Colon argues that the ALJ erred (1) in finding that his knee pain, breathing issues, leg/foot swelling, depression, and anxiety were non-severe ; (2) in assessing his RFC; (3) in failing to consider the impact of his need for an assistive device when crafting his RFC; (4) in finding that Colon could perform his past relevant work as a security guard despite providing no specific findings or analysis regarding the physical and mental demands of this work; (5) in failing to comply with SSR 82-59/SSR 18-3p when finding that Colon was non-compliant with his prescribed treatment; and (6) failing to focus on his ability to sustain competitive work activities. (Doc. 19, at 5). In response, the Commissioner maintains that the ALJ's decision is supported by substantial evidence and should be affirmed. (Doc. 24, at 2).

For the reasons set forth below, the Commissioner's decision to deny Colon benefits will be **VACATED** and the case be **REMANDED** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g).

### A. THE ALJ FAILED TO CONSIDER COLON'S NON-SEVERE IMPAIRMENTS OF BREATHING DIFFICULTIES AND SLEEP APNEA IN CRAFTING THE RFC.

In step two of the evaluation process, an ALJ is required to consider whether a claimant's impairments are (1) medically determinable[3] and (2) severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521; 20 C.F.R. §§ 416.920(a)(4)(ii), 416.921. An impairment is not considered severe if it does not significantly impact a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c). If an ALJ determines that a claimant has a severe condition at step two, then the sequential analysis proceeds to step three. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521; 20 C.F.R. §§ 416.920(a)(4)(ii). 416.921. As such, generally "[a] failure to find a medical condition severe at step two will not render a decision defective if some other medical condition was found severe at step two." *Weitzel v. Colvin*, 967 F. Supp. 2d 1089, 1097 (M.D. Pa. 2013).

However, finding that an impairment is non-severe at step two "does not obviate the need for a separate analysis of how Plaintiff's impairment affects her RFC." *Soboleski v.*

---

[3] Under the regulations, a medically determinable impairment is evaluated as follows:

Your [medically determinable] impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).

20 C.F.R. § 404.1521; 20 C.F.R. § 416.921.

*Comm'r of Soc. Sec.,* No. 14-3156, 2015 WL 6175904, at *2 (D.N.J. Oct. 20, 2015); *see also Hess*, 931 F.3d at 209 (explaining that because the functional limitation findings at step two and the RFC assessment at step four "serve distinct purposes and may be expressed in different ways . . . the findings at steps two and three will not necessarily translate to the language used at steps four and five."). Indeed, under the regulations, an ALJ is required to assess all of a claimant's medically determinable impairments – including those that are not severe – in combination when making the subsequent RFC determination. *See* 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2); *see also Weitzel*, 967 F. Supp. 2d at 1097 ("[A]ll of the medically determinable impairments both severe and non-severe must be considered at step two and then at step four when setting the residual functional capacity."). As further explained by SSR 96-8p:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "non severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.
>
> SSR 96–8p, 1996 WL 374184 (emphasis added).

Thus, "[e]ven if the ALJ properly determines that a claimant's impairments are non-severe [at step two] . . . a finding of non-severity does not eliminate those impairments from consideration of his or her overall ability to perform past work." *Marsella v. Comm'r of Soc. Sec.,* No. CV 18-2294 (JBS), 2019 WL 912141, at *9 (D.N.J. Feb. 25, 2019) (emphasis added). Similarly, "where the disability analysis continues to [s]tep [three], an ALJ's erroneous determination of an impairment's non-severity may constitute harmless error, provided that

the impairment continues to be factored in." *Rodriguez v. Berryhill*, No. CV 17-6884-KM, 2019 WL 1013343, at *9 (D.N.J. Mar. 1, 2019) (emphasis added); *see also Rutherford v. Barnhart*, 399 F.3d 546, 552–53 (3d Cir. 2005) (failing to determine the severity of a condition at stage two was harmless because the ALJ properly considered it in the evaluation of the claimant's limitations). However, where it appears that the ALJ's error at step two also influenced the ALJ's RFC analysis, the reviewing court may remand the matter to the Commissioner for further consideration. *McClease v. Comm. of Soc. Sec.*, No. 08-1673, 2009 WL 3497775, at *11 (E.D. Pa. Oct. 28, 2009) (citing *Nosse v. Astrue*, No. 08-cv-1173, 2009 WL 2986612, at *13 (W.D. Pa. Sept. 17, 2009) ("Until the ALJ explains why plaintiffs mental conditions are not severe . . . and provides reasons for rejecting [doctor's] diagnoses and opinions, the court is unable to determine whether the ALJ's RFC determination is supported by substantial evidence.")).

At step two, the ALJ considered Colon's "breathing difficulties, obstructive sleep apnea, history of mitral valve prolapse, peripheral vascular disease, hepatitis C, GERD, H. pylori, hypertension, knee and/or foot impairment, diabetes, thyroid impairment, hepatitis C, hyperlipidemia and/or history of heroin abuse" and found that the impairments "pos[e] more than a minimal limitation upon [his] ability to perform basic work activities." (Doc. 14-2, at 22).

In determining that Colon's breathing difficulties and obstructive sleep apnea were non-severe, the ALJ considered Colon's testimony, treatment notes from his cardiology provider, pulmonary function testing, and medical reports regarding chest pain, shortness of breath, and sleep studies, finding that "[t]here is no documentation of significant additional treatment relating to breathing difficulties and/or obstructive sleep apnea." (Doc. 14-2, at 19).

The Commissioner argues that the ALJ considered sufficient evidence in determining that Colon's breathing difficulties and sleep apnea were non-severe. (Doc. 24, at 19). The Commissioner contends that "[w]hile [Colon] alleges difficulty breathing aggravated by walking and talking" testing and medical examinations indicate that he did not have an airway obstruction, had a normal FEVI/FVC ratio, and was negative for shortness of breath. (Doc. 24, at 19). Further, the Commissioner states that "[w]hile Colon has sleep apnea, there is no evidence of any significant treatment related to breathing issues or sleep apnea." (Doc. 24, at 19).

In contrast, Colon avers that his medical records confirm ongoing breathing limitations that would significantly limit his ability to perform work activities. (Doc. 19, at 11). Specifically, Colon points to the opinions of his cardiology providers regarding the severity of his breathing issues. (Doc. 19, at 11-12). In a report from November 7, 2017, Dr. Fugate, a physician with a specialty in cardiology, notes that Colon "continues to have progressive symptoms involving chest pain or shortness of breath [and that he was] concerned with [Colon's] multiple coronary disease risk factors." (Doc. 14-12, at 36). Additionally in a report following an office visit in the cardiology department on November 28, 2017, it is noted that Colon "continues [to have shortness of breath] despite negative echocardiogram and cardiac catheterization therefore deemed noncardiac in nature." (Doc. 14-14, at 93). Concerns about "respiratory suppression due to medications and obesity along with sleep apnea" were also noted. (Doc. 14-14, at 93).

Colon also presents medical records from September 6, 2018, and November 17, 2019, in support of his severe breathing limitations. (Doc. 19, at 12; Doc. 14-17, at 42-44; Doc. 14-31, at 28). First, cardiology outpatient notes from September 6, 2018, indicate that Colon

complained of shortness of breath and that his condition had worsened over the past several months. (Doc. 14-17, at 42-44). Next, upon completion of a sleep study on November 17, 2019, Colon was found to have "a severe form of Obstructive sleep apnea . . . [and that] his obstructive sleep apnea turned into a more complex form of sleep disordered breathing." (Doc. 14-31, at 28). Additionally, Colon was diagnosed with obstructive sleep apnea. (Doc. 14-31, at 28).

Even if the ALJ's finding that Colon's breathing issues and sleep apnea were non-severe was erroneous, the ALJ continued to step three as he found that Colon had severe impairments of degenerative disc disease, fibromyalgia, bilateral carpal tunnel syndrome, and obesity. (Doc. 14-2, at 19, 24). As the ALJ ruled in Colon's favor when he found that Colon had multiple severe impairments of degenerative disc disease, fibromyalgia, bilateral carpal tunnel syndrome, and obesity, and thus proceeded to step three, any error in finding Colon's impairments non-severe may be considered harmless. (Doc. 14-2, at 19); *see Weitzel*, 967 F. Supp. 2d at 1097. However, the Court turns to whether the ALJ considered Colon's non-severe impairments in his RFC determination. "[T]he Commissioner's procedures do not permit the ALJ to simpl[y] rely on his finding of non-severity as a substitute for a proper RFC analysis." *Kich v. Colvin*, 218 F. Supp. 3d 342, 355 (M.D. Pa. 2016) (citing *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013)); *see also Soboleski*, 2015 WL 6175904, at *2 (D.N.J. Oct. 20, 2015) (the ALJ's "simple phrase in the step two analysis does not obviate the need for a separate analysis of how Plaintiff's impairment [of irritable bowel syndrome] affects her RFC.").

Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that

which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by the medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018).

In *Cotter v. Harris*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." 642 F.2d 700, 704, 706-707 (3d Cir. 1981). However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp,* 204 F.3d at 83. "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). In making the RFC

determination, "the ALJ must consider all evidence before him." *Burnett*, 220 F.3d at 121 (citations omitted); 20 C.F.R. § 404.1527(c); *see also Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence. . . . The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects.").

Colon claims that the ALJ failed to consider the effects of his non-severe impairments, including his breathing issues, in combination with his severe impairments when formulating his RFC. (Doc. 19, at 25). Colon further avers that "[t]he ALJ never provided an analysis/discussion reflecting why he was not considering [his] 'non-severe' impairments when formulating his RFC assessment." (Doc. 19, at 25).

Here, the ALJ failed to consider Colon's breathing difficulties and sleep apnea in his RFC determination. As noted above, an ALJ may not rely on a finding of non-severity as a substitute for an RFC analysis. *See Kich*, 218 F. Supp. 3d at 355. Here, the ALJ does not mention Colon's breathing difficulties in his RFC determination. Further, the only mention of Colon's difficulty sleeping does not address his sleep apnea but instead notes his testimony that his symptoms affect his sleep and that his sleep is affected by "his wife worrying about her son with seizures". (Doc. 14-2, at 25, 28). The ALJ also notes that "[i]t appears that issues reported with sleeping may have been the result of frequent need to urinate due to use of diuretic medication when the claimant exhibited leg swelling during the summer and fall of 2018, not necessarily lumbar spine or body pain alone." (Doc. 14-2, at 33). However, such observations do not consider Colon's diagnosis of sleep apnea. (Doc. 14-31, at 28). "Because the ALJ's RFC analysis did not include further discussion of evidence relevant to [Colon's

- 17 -

breathing difficulties and sleep apnea] or an explanation of why [Colon's] complaints were not credible, it appears that the ALJ's conclusion here was primarily based on [his] conclusion at step two that those symptoms had abated." *McClease*, 2009 WL 3497775, at *11; *See also Orchard v. Saul*, No. 1:18-CV-02297, 2020 WL 1126235, at *5 (M.D. Pa. Jan. 21, 2020); *Melius v. Colvin*, No. 12-848, 2013 WL 5467071, at *4 (W.D. Pa. Sept. 30, 2013) (directing an ALJ to "determine if plaintiff's sleep apnea, whether severe or not, either alone or in combination with all of plaintiff's other impairments, both severe and not severe, results in any additional restrictions on plaintiff's ability to perform work-related functions").

Given the ALJ's failure to consider Colon's breathing issues in his RFC analysis, it is unclear whether the ALJ fully considered "the limitations and restrictions imposed by all of [Colon's] impairments" in determining the RFC. *See* SSR 96-8p; 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2); *Weitzel,* 967 F. Supp. 2d at 1097; *Soboleski*, 2015 WL 6175904, at *2. Therefore, regardless of whether Colon's conditions were erroneously considered non-severe impairments at step two, the Court is of the opinion that the RFC assessment is not supported by substantial evidence.

### B.  The Court declines to address Colon's remaining arguments.

Because the Court finds that the ALJ's decision must be vacated based on his failure to consider Colon's breathing limitations in combination with his other impairments in crafting his RFC, the Court declines to address Colon's remaining arguments. "A remand may produce different results on these claims, making discussion of them moot." *Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. 2016). The Court's evaluation of Colon's

additional contentions could be futile given that the ALJ's reconsideration of the RFC may yield a different result.

V. **REMEDY**

As a final matter, the Court addresses whether this case should be remanded to the Commissioner for further administrative proceedings or whether reversal and an award of benefits is appropriate. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100–01 (1991). However, the Third Circuit has advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000); *see e.g. Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). In this case, the appropriate measure is to **REMAND** for further proceedings.

VI. **CONCLUSION**

Based on the foregoing, the Commissioner's decision to deny Colon benefits is **VACATED** and the case is **REMANDED** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court will be directed to **CLOSE** this case.

An appropriate Order follows.

BY THE COURT:

Dated: August 26, 2022

*s/ Karoline Mehalchick*
KAROLINE MEHALCHICK
Chief United States Magistrate Judge